# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUFFIN ROAD VENTURE LOT IV, a Nevada corporation,<br><br>                         Plaintiff,<br><br>   v.<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut corporation; and ALLIANT INSURANCE SERVICES, INC., a Delaware corporation,<br><br>                         Defendant. | CASE NO. 10-CV-11-JM (WVG)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Doc. Nos. 26 & 33 |

Plaintiff Ruffin Road Venture Lot IV ("Ruffin Road") brought the above-entitled action against Defendant Travelers Property Casualty Company of America ("Travelers"), alleging causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing.[1] (Doc. No. 1, "Complaint.") Ruffin Road and Travelers now each move for summary judgment. (Doc. Nos. 26 & 33.)

Pursuant to CivLR 7.1(d)(1), the court has determined that this matter is appropriate for resolution without oral argument. For the reasons set forth below, the court GRANTS IN

---

[1] The Complaint also names a second defendant, Alliant Insurance Services, Inc. ("Alliant") in a cause of action for negligence. However, Alliant was subsequently dismissed from the suit by joint motion of the parties after reaching a settlement with Ruffin Road. (Doc. No. 25.)

PART and DENIES IN PART both motions.

## I. BACKGROUND

Ruffin Road is a Nevada corporation that owns a commercial office building (the "Building") located at 3635 Ruffin Road, San Diego, California 92121 (the "Property"). (Complaint ¶¶ 2 & 7.) On or around February 2, 2008, Ruffin Road purchased insurance policy number I-680-1639L744-TIL-08 from Travelers (the "Policy"), which provided coverage of risk of loss to the Property, including physical damage to the Building and any attached machinery and equipment as well as certain losses of business income. (Id. ¶ 7.)

On or around May 25, 2008, Ruffin Road discovered that a pipe running beneath the Property had burst. (Id. ¶ 8.) The pipe provided water to a closed air conditioning ("HVAC") system permanently attached to the Building. (Id.) As a result of the rupture, mud, rocks, and other debris were sucked into the pipe and circulated through the HVAC system, resulting in extensive damage. (Id.) Following the incident, Ruffin Road filed a claim with Travelers. (Id. ¶ 9.) Travelers issued a check to Ruffin Road in the amount of $19,054.45 to cover the cost of excavating and repairing the broken water pipe. (Id. ¶ 10.) However, Travelers subsequently refused to pay the balance of Ruffin Road's claim, including the cost of repairing the HVAC system itself; the cleaning expenses for the interior of the Building, which was damaged in the process of excavating the broken pipe; and the business income Ruffin Road claims it lost as a result of the incident. (Id. ¶ 11.)

Ruffin Road brought the instant action to recover the unpaid amounts allegedly owed it under the Policy, as well as for attorneys' fees and punitive damages based on its claim that Travelers acted in bad faith in refusing payment. Federal jurisdiction is based on the diversity of the parties pursuant to 28 U.S.C. § 1332(a)(1).[2] Ruffin Road now moves for partial summary judgment on the issue of liability as to both its claims against Travelers. (Doc. No. 26.) Travelers in turn has moved for summary judgment as to the entirety of the action. (Doc. No. 33.) Both motions are opposed. (Doc. Nos. 44 & 47.)

---

[2] Travelers is a corporation organized under the laws of Connecticut, with its principal place of business in Hartford, Connecticut. (Complaint ¶ 3.)

## II.  LEGAL STANDARD

A motion for summary judgment shall be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Prison Legal News v. Lehman, 397 F.3d 692, 698 (9th Cir. 2005). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the file that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). There is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Id. (emphasis in original). The opposing party cannot rest on the mere allegations or denials of a pleading, but must "go beyond the pleadings and by [the party's] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (citation omitted). The opposing party also may not rely solely on conclusory allegations unsupported by factual data. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

The court must examine the evidence in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Any doubt as to the existence of any issue of material fact requires denial of the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). On a motion for summary judgment, when "'the moving party bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence were uncontroverted at trial.'" Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992) (emphasis in original) (quoting Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264-65 (5th Cir. 1991), cert. denied, 502 U.S. 1059 (1992)).

Where the dispute centers on the existence of coverage under an insurance policy, interpretation of that policy "is a question of law and follows the general rules of contract interpretation." MacKinnon v. Truck Ins. Exchange, 31 Cal. 4th 635, 647 (2003). This means that the court "must give effect to the 'mutual intention' of the parties," which should be "inferred, if possible, solely from the written provisions of the contract." Id. These provisions

should be given their "'clear and explicit' meaning" and interpreted "in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage.'" Id. at 647-48 (quoting CAL. CIV. PRO. CODE § 1644). However, if the provision is capable of more than one reasonable construction, it will be considered ambiguous. Id. at 648. Ambiguous language must be "interpreted broadly so as to afford the greatest possible protection to the insured." Id.(quoting White v. Western Title Ins. Co., 40 Cal. 3d 870, 881 (1985)).

### III. DISCUSSION

#### A. Ability to Sue

At the outset, Travelers has raised the threshold question of whether Ruffin Road has the capacity to bring the instant action. Specifically, Travelers argues that Ruffin Road is unable to pursue litigation in California based on its status as a forfeited corporation. (Doc. No. 33-1 pp. 6-7.) In addition, Travelers asserts that the Policy is itself voidable because Ruffin Road was a forfeited corporation at the time it entered into the contract. (Id. at pp. 8-9.) Both these issues have been addressed in a previous order. (Doc. No. 57.) Because Ruffin Road has both revived its previously forfeited corporate status and obtained retroactive relief from contract voidability from the California Franchise Tax Board, any barriers to its ability to bring suit against Travelers based on the Policy have been resolved. (See Doc. Nos. 56 & 60.) Therefore, Travelers' motion for summary judgment on these grounds is DENIED.

#### B. Breach of Contract

Each party has moved for summary judgment on Ruffin Road's breach of contract claim, which turns on the issue of whether the damages and losses claimed by Ruffin Road are covered under the Policy. Specifically, Ruffin Road asserts three categories of expenses for which it claims it is entitled to reimbursement from Travelers: (1) the cost of repairing the damage to the Building caused in the process of excavating and repairing the broken pipe; (2) the cost of removing the contaminants from the HVAC system; and (3) lost rental income from prospective tenants due to the Building's lack of a functioning HVAC system. Travelers contests liability for each of these claimed expenses.

### 1) **Damage to Building**

According to Ruffin Road, a significant amount of damage was done to the drywall, floor coverings, paint, and carpet inside the Building during the process of excavating and repairing the broken pipe. (Complaint ¶ 21.) Although Travelers did cover most of the cost of the excavation and repair itself, it refused to pay for the necessary repairs to the interior of the Building. (Id. ¶ 11.)

Ruffin Road contends that the cost of repairing this damage clearly qualifies as part of the "Additional Coverages" provided by the Policy, specifically under the provision for "Water Damage, Other Liquids, Powder or Molten Material Damage." (Doc. No. 26-1 p.8.[3]) That provision states in pertinent part:

> If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage occurs, [Travelers] will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

(Doc. No. 26-7 Exh. 1, the "Policy," para. A(6)(p)(1).)

Travelers contests this reading of the Policy, arguing that any damage caused to the Building as a result of the ruptured pipe is water damage specifically excluded under the Policy. (Doc. No. 47 p.12.) Travelers cites to one of the "Exclusions" listed in the Policy, which exempts from coverage "loss or damage caused directly or indirectly by . . . [w]ater under the ground surface pressing on, or flowing or seeping through . . . [f]oundations, walls, floor or paved surfaces." (Id. at pp. 12-13; Policy at para. B(1)(g)(4)(a).) Travelers further contends that the payment made to Ruffin Road in the amount of $19,054.45 to cover the cost of excavating the pipe was made in error. (Doc. No. 47 p.12.) Although Travelers admits that it originally made this payment pursuant to the provision for additional coverage of water damage cited by Ruffin Road above, it now denies that such coverage was ever applicable under the circumstances, and objects to any additional claims for repairs to the interior of the

---

[3] Citations are to Ruffin Road's motion for partial summary judgment; however, essentially the same arguments are also repeated in its opposition to Travelers' motion for summary judgment. (Doc. No. 44.) Similarly, most of Travelers' arguments are cited from its opposition to Ruffin Road's motion (Doc. No. 47), but are also repeated in its own motion (Doc. No. 33).

1  Building. (Id. at p.13.) In addition, Travelers claims that some of the damage described by
2  Ruffin Road was caused by the carelessness of the contractor hired to conduct the excavation,
3  and therefore is also not covered under the Policy. (Id.)

4        Ruffin Road's Policy with Travelers is what is known as an "all-risk" insurance policy,
5  meaning that the Policy provides coverage for all risks of physical loss to the covered property
6  except those that fall within specifically enumerated exclusions or limitations. See Garvey v.
7  State Farm Fire & Cas. Co., 48 Cal. 3d 395, 399 (1989). Neither party disputes the fact that the
8  Building and the pipes beneath it constitute covered property. Therefore, the question is
9  whether one or more of the exclusions or limitations applies.

10       A straightforward reading of the Policy terms supports Travelers' position. It is
11 undisputed that an underground pipe buried beneath the Building ruptured on or around
12 May 25, 2008, and that as a result water leaked or seeped upwards through the first floor. (See
13 Doc. No. 26-2 p.2; Doc. No. 33-2 p.2-3.) Any damage that resulted from this leakage is
14 excludable under the Policy coverage exception for water damage quoted above. The water
15 from the pipe was undeniably "under the ground surface" and "pressing on, or flowing or
16 seeping through" the foundation and floor of the Building. Moreover, the Policy makes this
17 exception applicable regardless of whether the water is "naturally occurring or due to man
18 made or other artificial causes." (Policy at para. B(1)(g)(4).) In addition, because the
19 underground water leakage is not covered, the provision cited by Ruffin Road is inapt, as it
20 only describes "loss or damage caused by or resulting from *covered* water . . . damage."
21 (Emphasis added.) Because the water seepage is not covered, this section does not extend to
22 any resulting loss or damage to the Building.

23       Ruffin Road also points to a provision in the Policy that states certain exceptions to the
24 exclusions—that is, damage that, although falling within one of the exclusions from coverage,
25 would nevertheless be paid for under the Policy. Specifically, paragraph B(2)(d) lists several
26 exclusions including "loss or damage caused by or resulting from . . . [w]ear and tear [or] . . .
27 [m]echanical breakdown." (Policy at para. B(2)(d)(1) & (6).) According to Ruffin Road,
28 Travelers relied on these exclusions in ultimately denying coverage on Ruffin Road's claim.

1  (Doc. No. 26-1 p.9.) However, the final sentence of that paragraph provides that, if an
2  excluded cause of loss listed therein

> results in a "specified cause of loss", building glass breakage or "breakdown" to "covered equipment" (only if otherwise a Covered Cause of Loss), [Travelers] will pay for the loss or damage caused by that "specified cause of loss", building glass breakage or "breakdown" to "covered equipment" (only if otherwise a Covered Cause of Loss).

6  (Policy at para. B(2)(d).) The Policy in turn defines "specified causes of loss" to include "water
7  damage," which is described as any "accidental discharge or leakage of water or steam as a
8  direct result of the breaking apart or cracking of any part of a system or appliance (other than
9  a sump system including its related equipment and parts) that is located on the described
10 premises and contains water or steam." (Policy at para. G(26)(c).)

11       It is not clear whether the pipe rupture was the result of wear and tear, mechanical
12 breakdown, or some other cause. (See Doc. No. 26-1 p.10.) However, to the extent that Ruffin
13 Road is relying on this exception to extend coverage to the damage caused by the underground
14 water leakage, its reliance is misplaced. Even though the pipe rupture appears to fall squarely
15 within the definition for the "specified cause of loss" of "water damage," the exception also
16 specifically states that the Policy will cover loss or damage caused by a "specified cause of
17 loss" only if it is "otherwise a Covered Cause of Loss." As discussed above, water leaking into
18 the Building from underground is not a "Covered Cause of Loss" under the Policy. Therefore,
19 this provision does not apply, and Ruffin Road is not entitled to coverage under this theory.
20 Although Travelers already paid a portion of the cost of repairing the water damage caused by
21 the burst pipe, it was not required to do so, and is not obligated to pay the remainder. As a
22 result, the court grants summary judgment in favor of Travelers on this claim.[4]
23 //

24

---

[4] Travelers has also raised the possibility that some if not all of the remaining damage being claimed by Ruffin Road was caused by the carelessness of the contractor hired to conduct the excavation, rather than by the water itself. (Doc. No. 47 p.13.) As Ruffin Road correctly notes, where third-party negligence is not specifically excluded, it is one of the insured risks of physical loss covered by an all-risk policy. See Garvey, 48 Cal. 3d at 407. However, this theory was not advanced as a cause of damage by Ruffin Road, and neither side has provided any actual evidence of contractor negligence. Therefore, the court declines to consider it as a possible basis for judgment in favor of Ruffin Road.

### 2) Removing Contaminants from HVAC System

Ruffin Road claims it is also entitled to recover the cost of removing the mud and rocks from the water now inside the Building's HVAC system. (Doc. No. 26-1 p.8.) According to Ruffin Road's expert, the HVAC system needs to be "back-flushed" in order to remove the debris that was sucked in through the cracked underground pipe. (Id. at p.3.) Ruffin Road now argues that this expense is generally covered as a "risk of physical loss" not specifically limited or excluded under the Policy. (Id. at pp. 8-9.) Ruffin Road also claims coverage is explicitly extended under the provision granting "Additional Coverage" for "Pollutant Cleanup and Removal," which states:

> [Travelers] will pay [Ruffin Road's] necessary and reasonable expense to extract "pollutants" from land or water at the described premises, if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a "specified cause of loss" which occurs:
>
> (a)  At the described premises;
>
> (b)  To Covered Property; and
>
> (c)  During the policy period.

(Id. at p.9; Policy at para. A(6)(m)(1).)

Travelers objects to this claim on a number of grounds. First, it argues that Ruffin Road never submitted a claim for merely removing debris from the HVAC system, but instead had previously requested that Travelers pay for the cost of replacing the system entirely. (Doc. No. 47 p.14.) Travelers argues that it cannot be held liable for breach of contract based on its denial of a claim that was never made. (Id.) Second, Travelers claims that Ruffin Road failed to disclose the pollutant removal provision as one of the bases for its breach of contract claim during the course of discovery, such that it should now be prohibited from asserting it in the instant motion. (Id. at pp. 14-15.) Third, Travelers points out that Ruffin Road has not offered evidence of the existence of a process by which the mud and dirt could be extracted from the water. (Id. at p.15.) Fourth, Travelers contests Ruffin Road's characterization of the dirt and mud inside the HVAC system as "pollutants." (Id.) Travelers cites to several California cases dealing with insurance policies containing pollution exclusions, and argues that the term refers

1 only to "environmental pollutants," and not dirt and mud, which are "everywhere." (Id.)
2 Finally, Travelers points to an explicit exclusion in the Policy for "[c]ontamination by other
3 than 'pollutants,'" which it argues is the more appropriate description for the debris that has
4 infiltrated the HVAC system. (Id. at pp. 16-17.) According to Travelers, this provision entitles
5 it to summary judgment on the issue of liability for any repairs to the HVAC system. (Doc.
6 No. 33-1 pp. 9-11.)

7 With regard to Travelers' first argument, Ruffin Road claims that the cost of flushing
8 the HVAC system *was* in fact part of its original claim, because "in order to repair the HVAC
9 system the pollutant mud and debris needed to be flushed from the HVAC system." (Doc. No.
10 55 p.6.) Regardless of whether this is true, the specific nature of the type of repair requested
11 by the insured should not affect the question of whether the insurer improperly denied
12 coverage where actual damage of some form has been shown. Travelers cannot claim that its
13 decision to deny coverage for repair of Ruffin Road's HVAC system was premised on the
14 amount of the anticipated cost of the repair—that is, whether Ruffin Road requested that the
15 entire system be replaced or that it simply be flushed out should not have affected the
16 determination of whether coverage actually existed. Therefore, the first objection to the claim
17 by Travelers is without merit.

18 As before, neither party disputes that the HVAC system is property covered under the
19 Policy, and the question of coverage on this particular claim turns on a determination of
20 whether any of the specified exclusions apply. However, it may be helpful to focus initially
21 on the disputed meaning of the term "pollutants," as this definition appears central to the
22 arguments of both parties.

23 Under the Policy, "pollutants" are defined as "any solid, liquid, gaseous or thermal
24 irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste,
25 and any unhealthful or hazardous building materials (including but not limited to asbestos and
26 lead products or materials containing lead)." (Policy at para. G(20).) Travelers contends that
27 this term by definition does not include substances like dirt and mud. (Doc. No. 47 p.15.) For
28 support, it cites to two California cases in which the courts analyzed certain insurance pollution

provisions and concluded that the term "pollutant" should be interpreted as referring only to "conventional environmental pollution." MacKinnon, 31 Cal. 4th at 653; see also Am. Cas. Co. of Reading, Penn. v. Miller, 159 Cal. App. 4th 501, 514-15 (2008). Although these cases are certainly helpful in interpreting the Policy language here, they are not dispositive for several reasons. First, as Ruffin Road points out, both these cases deal exclusively with *exclusionary* language contained in insurance contracts, which are interpreted under a different standard than inclusionary language. (Doc. No. 55 pp. 6-7.) Here, the term "pollutants" is found in both exclusionary and inclusionary provisions of the Policy, so the analysis becomes somewhat more complicated. Second, Travelers overlooks another California case, Ortega Rock Quarry v. Golden Eagle Ins. Corp., in which the California Court of Appeal found that dirt and rocks *could* constitute "pollution" for insurance purposes under certain circumstances. 141 Cal. App. 4th 969 (2006). Last and most importantly, a court's interpretation of contractual language in one case is not binding in subsequent cases; the same word or phrase appearing in two different contracts may take on somewhat different meanings in each, depending on the circumstances. "[L]anguage in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case . . . ." Powerline Oil Co., Inc. v. Superior Court, 37 Cal. 4th 377, 391 (2005) (quoting Bank of the West v. Superior Court, 2 Cal. 4th 1254, 1265 (1992)).

Even taking these considerations into account, however, the Policy's inclusionary provision for "Pollutant Cleanup and Removal" does not appear applicable in the situation currently before the court. Ruffin Road argues that a "pollutant" can be anything that makes something else "unclean or impure." (Doc. No. 44 p.16.) As an example, it describes a child's soiled clothing as an instance in which dirt has made something unclean. (Id.) However, this interpretation strains the "ordinary and popular" meaning of the word. No reasonable layperson would think to describe dirty clothing as "polluted." California cases in which relatively innocuous substances *have* been determined to be "pollutants" for insurance purposes deal with situations in which those substances were released widely into the water or the air, resulting in the contamination of the source's natural surroundings. See Ortega Rock Quarry, 141 Cal. App. 4th at 981 (fill dirt washed into local creek in violation of Clean Water Act); Cold Creek

1  Compost, Inc. v. State Farm Fire & Cas. Co., 156 Cal. App. 4th 1469, 1486 (2007) (clouds of dust released into air from waste composting facility). The current case deals only with the contamination of an internal, wholly contained air conditioning system.

Moreover, as the MacKinnon Court reasoned, "[v]irtually any substance can act under the proper circumstances as an 'irritant or contaminant.'" MacKinnon, 31 Cal. 4th at 650. To extend the definition of "pollutant" to include *any* form of impurity would stretch the Policy provision far beyond its reasonable scope. Ruffin Road's exclusive reliance on the dictionary definition is misguided, as it fails to take into account the nature and context of the Policy as a whole. See id. at 649 ("Although examination of various dictionary definitions of a word will no doubt be useful, such examination does not necessarily yield the 'ordinary and popular' sense of the word if it disregards the policy's context."). First, it should be noted that the Policy's definition of "pollutants" is drawn almost word-for-word from the so-called "absolute pollution exclusion" found in the standard comprehensive general liability insurance form that first appeared around 1985, which was written with the objective of "avoid[ing] liability for environmental catastrophes related to intentional industrial pollution." Id. at 644, 653. Second, the term's intended environmental focus is supported by the provision's wording, which specifically refers to the "extract[ion] of 'pollutants' ***from land or water***." (Emphasis added.) The ordinary and most reasonable reading of this language is that the provision is targeted at pollutants that have contaminated the natural surroundings of the insured property—for example, chemicals that have leached into the soil, or waste that has been discharged into a nearby stream. Although the alleged "pollutants" in this case are technically found in water, it is the water that moves through the man-made closed circuit of the HVAC system, and that is not part of or in contact with any naturally occurring body of water. Finally, a reading of the term "pollutant" to include *all* contaminants essentially nullifies the later exclusionary provision cited by Travelers, which excepts from coverage loss or damage caused by "[c]ontamination by ***other than 'pollutants***.'" In other words, if all contaminants are "pollutants" under the Policy—as they would be were the court to adopt Ruffin Road's definition—this provision would become meaningless, and "[i]t is well settled that a contract

1  should be interpreted so as to give meaning to each of its provisions." <u>Brinderson -Newberg</u>
2  <u>Joint Venture v. Pac. Erectors, Inc.</u>, 971 F.2d 272, 278-79 (9th Cir. 1992). Therefore, coverage
3  cannot be found under the inclusionary provision cited by Ruffin Road.[5]

4  On the other hand, the fact that Ruffin Road is unable to cite a Policy provision that
5  describes the specific inclusion of the HVAC repairs does not mean that coverage should
6  necessarily be denied. As discussed above, where it is undisputed that some physical damage
7  has occurred to covered property, that damage should be covered under an all-risk policy
8  unless a specific exclusion or limitation can be shown to apply. Moreover, the burden is on the
9  insurer to establish that a claim is specifically excluded. <u>MacKinnon</u>, 31 Cal. 4th at 648.

10  Here, Travelers argues that exclusion is proper under paragraph B(2)(d)(8), which
11  states: "[Travelers] will not pay for loss or damage caused by or resulting from . . .
12  [c]ontamination by other than 'pollutants.'" There is no additional language elaborating on the
13  meaning of this statement beyond the definition of "pollutants" quoted above. Travelers argues
14  that it is indisputable that the presence of the debris in the HVAC system constitutes
15  "contamination." (Doc. No. 33-1 p.10.) As evidence, it cites to a California property insurance
16  case in which "contamination" was defined variously as an "[i]mpairment or impurity
17  result[ing] from mixture or contact with a foreign substance"; the act of "render[ing] unfit for
18  use by the introduction of unwholesome or undesirable elements"; and "a condition of impurity
19  resulting from mixture or contact with a foreign substance." (<u>Id.</u> at pp. 10-11 (quoting <u>Alex R.</u>
20  <u>Thomas & Co. v. Mut. Ser. Cas. Ins. Co.</u>, 98 Cal. App. 4th 66, 73 (2002)).) For several of the
21  same reasons given above, the definition of a policy term in one case does not necessarily
22  control in another. Travelers' proposed definition of contamination appears overly broad when
23  viewed in the context of the Policy as a whole. It has already been established that the Policy's
24  reference to "pollutants" is most naturally understood as a reference to traditional
25  environmental pollution. The exclusion relied on by Travelers appears to be the flip side of the
26  provision cited by Ruffin Road—that is, while contamination by "pollutants" *is* covered,

---

28  [5] Because Ruffin Road's theory of coverage under the pollutant provision fails, Travelers' second argument that this provision was never raised as part of Ruffin Road's original claim or in the course of discovery is moot.

1 contamination by everything else is not. However, because these two provisions are closely
2 related, the implication is that both are limited to discussing contamination in the context of
3 the natural environment. That is, the "contamination" that is specifically excluded refers to the
4 introduction of some foreign or unwanted substance into the land or water that does not rise
5 to the level of "traditional environmental pollution." In that case, the presence of debris inside
6 the closed circuit of the HVAC system would not be "[c]ontamination by other than
7 'pollutants'" within the meaning of the Policy.

8 It may very well be that Travelers intended for this exclusionary provision to
9 incorporate a much more expansive definition of "contamination" than the one arrived at here.
10 However, even if that is the case, that intention is not conveyed clearly in the brief statement
11 that constitutes the entirety of the exclusion. By law, the insurer is required "to phrase
12 exceptions and exclusions in ***clear and unmistakable language***." MacKinnon, 31 Cal. 4th at
13 648 (emphasis added). Where they are unclear or ambiguous, "exclusionary clauses are
14 interpreted narrowly against the insurer." Id. Therefore, because a reasonable reading of the
15 Policy does not exclude coverage for the damage to Ruffin Road's HVAC system, the court
16 grants partial summary judgment in favor of Ruffin Road on the issue of liability only for this
17 claim. Because the parties do not agree on the precise nature of the repairs that will be
18 required, the question of damages for this breach of contract are reserved for trial.

19       **3)**   **Lost Rental Income**

20 Finally, Ruffin Road claims it is entitled to payment for lost business income under the
21 Policy because two of its three tenants vacated the premises after the HVAC system was
22 damaged, and its inability to provide a functioning air conditioning system for the Building has
23 prevented it from finding new tenants to replace them. (Doc. No. 26-1 p.10.) Its claim is based
24 on a Policy provision entitled "Business Income" that states:

25  [Travelers] will pay for the actual loss of Business Income [Ruffin Road]
 sustain[s] due to the necessary "suspension" of [its] "operations" during the
26  "period of restoration". The "suspension" must be caused by direct physical loss
 of or damage to property at the described premises. The loss or damage must be
27  caused by or result from a Covered Cause of Loss.

28 (Policy at para. A(3)(a)(2).)

1   Travelers argues that no coverage is owed because the damage to the HVAC system is
2   not a "Covered Cause of Loss"—an argument that is rejected, for the reasons described above.
3   However, Travelers also argues that the non-functioning HVAC system did not cause Ruffin
4   Road to suffer an actual loss of business income. (Doc. No. 47 p.19.) Specifically, Travelers
5   has presented evidence that the two tenants that Ruffin Road claims it "lost" in fact "vacated
6   the premises for reasons completely unrelated to the claimed condition of the [B]uilding's
7   HVAC system." (Id.; see also Doc. No. 51 Exhs. I & J.) Moreover, with regard to Ruffin
8   Road's alleged inability to re-lease the vacated units, Travelers correctly points out that Ruffin
9   Road has failed to submit any actual evidence of that fact. (Doc. No. 47 p.19; see Doc. No. 26-
10  1 pp. 10-11 (citing to the declaration of Ruffin Road's real estate broker Brian Mulvaney as
11  proof that his efforts to lease the vacant floors of the Building were "futile because of the non-
12  functioning HVAC system," and that Ruffin Road could have obtained tenants willing to pay
13  at least $1.25 per square foot had the HVAC system been operating properly; no such
14  declaration attached); see also Mohamed v. Jeppeson Dataplan, Inc., 614 F.3d 1070, 1098 n.12
15  (9th Cir. 2010) ("[P]leadings are not considered evidence.").)

16  Travelers has alleged that Ruffin Road has not and cannot provide evidence to support
17  an essential element of its claim—namely, that it suffered actual damage in the form of lost
18  business income. The burden is therefore on Ruffin Road to produce at least some evidence
19  in support of its claim. See Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d
20  1099, 1102-03 (9th Cir. 2000). This Ruffin Road has failed to do, despite being put on notice
21  by Travelers that the purported declaration of its real estate broker was not attached to its
22  motion. Whether this oversight was simply a matter of inadvertence or the result of Ruffin
23  Road's inability to obtain the signed declaration is not for the court to decide. Because Ruffin
24  Road has failed to produce enough evidence to create a genuine issue of material fact,
25  summary judgment on this claim must be granted in favor of Travelers. Id. at 1103.

26  **C.   Breach of Implied Covenant of Good Faith and Fair Dealing**

27  Ruffin Road also moves for partial summary judgment on the issue of Travelers'
28  liability for breach of its implied covenant of good faith and fair dealing because its denial of

Ruffin Road's insurance claim was not made in good faith or on reasonable grounds. (Doc. No. 26-1 p.12.) Ruffin Road's position is based in part on its allegation that Travelers failed to investigate whether the damage to the HVAC system could be covered under the "Additional Coverage" provision for "Pollutant Cleanup and Removal." (Id. at pp. 13-14.) However, as already discussed, this provision does not apply to the circumstances of Ruffin Road's claim; therefore, no bad faith can be inferred from the fact that Travelers failed to address the provision.

Ruffin Road also alleges that Travelers failed to comply with the California Department of Insurance's Fair Claims Settlement Practices Regulations when it failed to respond to an estimate for the repairs to the interior of the Building submitted in July 2008. (Id. at p.14.) However, as Travelers points out, Ruffin Road has not presented any evidence that any such estimate was submitted to it around that time. (Doc. No. 47 p.24.) Rather, the correspondence between Ruffin Road and Travelers provided by Ruffin Road in support of its motion appears to prove that the estimate was submitted some time on or around August 14, 2008, and that a Travelers representative sent a written response to Ruffin Road on or around September 19, 2008. (See Doc. No. 26-7 Exhs. 2 & 3.) Therefore, there is no evidence of a regulatory violation committed by Travelers or any acts that would imply that Travelers acted in bad faith in dealing with Ruffin Road's claim.

Furthermore, although the analysis above ultimately concludes that Ruffin Road *is* entitled to coverage for the damage to its HVAC system, the lengthy discussion required to reach that conclusion illustrates the fact that it was not a straightforward or obvious determination. Thus, there is no reason to believe that Travelers' denial of Ruffin Road's claim was unreasonable, and summary judgment is granted in favor of Travelers on this claim.

### D.     Concealment or Misrepresentation of Material Facts

Finally, Travelers alleges in its opposition to Ruffin Road's motion that Ruffin Road should be denied coverage because it "intentionally concealed and misrepresented material

facts in connection with its claim submission," thereby invalidating the Policy.[6] (Doc. No. 47 pp. 20-21.) Specifically, Travelers claims that Ruffin Road "knowingly fabricated" the story that two of its tenants vacated the Building because of the non-functioning HVAC system as evidence that it was entitled to lost business income under the Policy. (Id. at p.21.) However, a careful reading of Ruffin Road's motion shows that this is not a proper characterization of Ruffin Road's position. Rather, the motion states:

> After the HVAC system was shut down, two of the Building's three tenants left. Travelers will argue that those tenants left for reasons other than the HVAC system that Travelers refused to repair; but Travelers cannot dispute the lack of a functioning environmental system made the Building uninhabitable for its intended commercial use and therefore made it ***difficult or impossible for [Ruffin Road] to rent to new tenants***.

(Doc. No. 26-1 p.10 (emphasis added); see also Doc. No. 26-2, Separate Statement of Uncontroverted Facts in Support of Plaintiff's Motion for Partial Summary Judgment, Fact No. 23 ("Travelers has refused to pay not only for any repairs to the Building, but for any lost rents suffered as a consequence of the non-functioning HVAC system. As a result, the first two floors of the Building cannot be rented . . . .").) Thus, the alleged fabrications regarding the Building's departing tenants were in fact never made by Ruffin Road.

Travelers also points out that Ruffin Road submitted a claim for the cost of replacing the entire HVAC system, when in fact the problem could have been resolved by taking the simpler and much less expensive step of flushing the system to remove the debris from inside the pipes. (Doc. No. 47 pp. 21-22.) According to Travelers, this is also evidence that Ruffin Road deliberately concealed material information about the nature of the damage it suffered in order to obtain a higher payout from Travelers. (Id. at p.22.) However, this again appears to be a mischaracterization of Ruffin Road's position. According to the evidence submitted by Ruffin Road, its contractor, Brian Persson, advised it that, "at a minimum," the system would need to be back-flushed to remove the contaminants; however, Mr. Persson also stated his opinion that the back-flushing would likely cause further damage to the system overall, and

---

[6] The Policy contains a provision that states: "This Coverage Form is void in any case of fraud by [Ruffin Road]. It is also void if [Ruffin Road] or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning . . . [a] claim under this Coverage Form." (Doc. No. 47 p.20.)

that a certain amount of debris would remain within the system even with multiple back-flushing attempts. (Doc. No. 26-4, Decl. of Brian P. Persson, ¶ 7.) Thus, Ruffin Road's original request to replace the HVAC system in its entirety was not necessarily an attempt to defraud Travelers, as the evidence indicates that Ruffin Road believed that more drastic measures were required in order to return the HVAC system to its original state.

Therefore, because Travelers has failed to demonstrate concealment or misrepresentation on the part of Ruffin Road, Travelers' objection to Ruffin Road's motion on these grounds is overruled.

## IV. CONCLUSION

For the reasons set forth above, the court hereby GRANTS IN PART and DENIES IN PART both parties' motions for summary judgment. Specifically, summary judgment is granted in favor of Plaintiff Ruffin Road with regard to Travelers' liability under the Policy for the damage to the HVAC system caused by the presence of debris inside. The actual amount of damages owed is to be determined at trial. Summary judgment on the remaining issues is granted in favor of Travelers; that is, Travelers is *not* liable for: (1) damage to the first floor of the Building caused by the water from the burst underground pipe; (2) lost business income as a result of Ruffin Road's purported inability to re-lease the unoccupied office space in the Building; or (3) breach of the implied covenant of good faith and fair dealing.

In addition, the court now resets the pending pretrial and trial dates and deadlines as follows:

1.  Parties or their counsel shall serve on each other and file with the Clerk of the Court their Memoranda of Contentions of Fact and Law in compliance with CivLR 16.1(f)(2) on or before **July 22, 2011**.

2.  All parties or their counsel shall also fully comply with the Pretrial Disclosure requirements of FED. R. CIV. P. 26(a)(3) on or before **July 22, 2011**. Failure to comply with these disclosure requirements could result in evidence preclusion or other sanctions under FED. R. CIV. P. 37.

3.  Counsel shall meet together and take the action required by CivLR 16.1(f)(4) on

1  or before **July 29, 2011**. At this meeting, counsel shall discuss and attempt to enter into
2  stipulations and agreements resulting in simplification of the triable issues. Counsel shall
3  exchange copies and/or display all exhibits other than those to be used for impeachment. The
4  exhibits shall be prepared in accordance with CivLR 16.1(f)(4)(c). Counsel shall note any
5  objections they have to any other party's Pretrial Disclosures under FED. R. CIV. P. 26(a)(3).
6  Counsel shall cooperate in the preparation of the proposed pretrial conference order.

7      4.    The proposed final pretrial conference order, including objections any party may
8  have to any other party's FED. R. CIV. P. 26(a)3) Pretrial Disclosures, shall be prepared, served,
9  and lodged with the Clerk of the Court on or before **August 12, 2011**, and shall be in the form
10 prescribed in and in compliance with CivLR 16.1(f)(6). Counsel shall also bring a court copy
11 of the pretrial order to the pretrial conference.

12     5.    The final pretrial conference shall be held before this court on **August 19, 2011**
13 at **8:30 am**.

14     6.    The trial in this matter shall commence on **September 19, 2011** at **10:00 am**.
15 **IT IS SO ORDERED.**
16 **DATED: June 20, 2011**

                                              **Hon. Jeffrey T. Miller**
                                              **United States District Judge**